1. *Order*
    In the light of the stipulation filed by the parties in the above-styled cause on the 18th of October, 1949, the entry of a

**HORWITZ'S ESTATE v. COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE v. MILLER (two cases).**

Nos. 12805, 12907.

United States Court of Appeals
Fifth Circuit.

March 11, 1950.

Order April 5, 1950.[1]

judgment affirming said cause is premature, and the order of the Court is said cause, entered on March 11, 1950, is hereby withdrawn.

86

No. 12805:

Bleecker L. Morse, Galveston, Tex., for petitioner.

Marvin K. Collie, Houston, Tex., Hilbert P. Zarky, Sp. Asst. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Ch. Cnsl., Bur. Of. Int. Rev., Washington, D. C., Claude R. Marshall, Sp. Atty. Bur. of Int. Rev., Washington, D. C., A. F. Prescott, Sp. Asst. to Atty. Gen., Fred E. Youngman, Sp. Asst. to Atty. Gen., for respondent.

No. 12907:

Theron L. Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Charles Oliphant, Ch. Cnsl., Bur. of Int. Rev., Washington, D. C., Claude R. Marshall, Sp. Atty. Bur. of Int. Rev., Washington, D. C., Hilbert P. Zarky, Sp. Asst. to Atty. Gen., for petitioner.

Marvin K. Collie, Houston, Tex., W. B. Browder, Jr., Houston, Tex., for respondents.

Before HUTCHESON, Chief Judge, and WALLER and BORAH, Circuit Judges.

WALLER, Circuit Judge.

The question involved in these cases is whether the estate of Will Horwitz, deceased, is taxable upon the entire income realized in 1943 from the operation of a theatre or whether one-fourth of that income was taxable as community income to the former wife of Horwitz.

The Commissioner, playing safe, assessed such income both to the estate and to the widow.

Specifically, the single issue in these appeals is whether the sum of $7,230.95, constituting the one-fourth net income from the Uptown Theatre for the year 1943, is taxable to the estate of Will Horwitz or to the community composed of Agatha Horwitz Miller and her husband, Edward J. Miller. Agatha Horwitz was divorced from Will Horwitz in 1929 and thereafter married Miller.

Under the laws of Texas Agatha Horwitz owned one-half of the community acquired by her and her husband during their marriage. Included in such community property was one-half of the Class B stock of the Isis-Horwitz Theatre Company. The other one-half of the stock was separate property of Will Horwitz which he had inherited from his mother. Interstate Circuit, Inc., owned all of the Class A stock in the Theatre Company. In the settlement connected with the divorce, Mrs. Horwitz received as her share of the community estate one-eighth of the Class B stock of the Isis-Horwitz Theatre Company.

Will Horwitz contracted to build a theatre known as the "Uptown Theatre" and also certain small commercial establishments, commonly known as the "Uptown Center".

After a controversy arose between Horwitz and Interstate Circuit, Inc., over the control of the Class B stock in the Isis-Horwitz Theatre Company, it became imperative for Horwitz to keep control of the one-eighth of the Class B stock owned by his former wife, who was then married to Edward J. Miller. In order not to lose such control, Horwitz made certain written agreements with his former wife and her husband which recited that she owned one-eighth of the outstanding stock in the Isis-Horwitz Theatre and one-eighth of the interest and equity of Will Horwitz in the Uptown Theatre and Uptown Center, sub-

ject to the payment of debts against such properties, all of which stood in the name of Will Horwitz, either individually or as trustee. By virtue of these agreements Agatha Horwitz Miller acquired a one-fourth interest in all of the right, title, and interest of Will Horwitz in the Uptown Theatre and relinquished all the right, title, and interest of Will Horwitz in the Uptown Properties, with the result that thereafter Agatha had no interest whatever in the Uptown Properties but had a one-fourth interest in the Uptown Theatre. It was agreed, moreover, that all the profits, dividends, rentals, or revenues from the Uptown Properties and Uptown Theatre should be received by, and belong to, Will Horwitz until all of the indebtedness due by him against these properties should be paid, after which Agatha would be entitled to one-fourth of the profits from said Theatre. Meanwhile, until the stock of the Isis-Horwitz Theatre Company or Uptown Theatre Company or both should be sold, Agatha or her estate would receive the sum of $60.00 per week, and in addition she would receive all the dividends declared by the Isis-Horwitz Theatre Company and the Horwitz-Texan Company. It was further provided that in the event of the sale of the Uptown Theatre and no sale of the Isis-Horwitz Theatre Company stock, she would receive not less than $35,000.00, plus one-fourth of any amount in excess of $140,000.00 for which the Uptown Theatre might be sold; whereupon the weekly payments would be reduced to $25.00 until such time as the Isis-Horwitz Theatre Company stock should be sold, and that in the event the theatre stock was sold but the Uptown Theatre was not sold, she was to receive not less than $25,000.00, plus one-fourth of any amount in excess of $100,000.00 for which such stock might be sold, with no provision for a reduction in the weekly payments of $60.00; and that in the event of a sale of both the Uptown Theatre and the Isis-Horwitz Theatre Company stock, she or her estate would receive not less than $60,000.00, plus one-fourth of any amount in excess of $240,000.00, for which both might be sold. The interest of Agatha in the stock and proper-

ties was conveyed to W. P. Hamblen, as trustee, who was given the right to vote the stock as he saw fit and also the right to sell her interest in the stock or property under the terms and conditions of the agreement.

It was understood that Horwitz should be the sole manager of the theatre with the right to use all the income, rents, and revenues in any manner he saw fit, and that Agatha accepted the $60.00 per week in lieu of any payments of income or rent from the Uptown Theatre until the debts were paid and she thereupon became entitled to one-fourth of the earnings of the Uptown Theatre.

At the time of the death of Will Horwitz the Uptown Theatre and Uptown Center were under heavy debt and operating under Creditors' Committee.

In August, 1944, a settlement was reached between Hamblen, individually as trustee and as executor of the estate of Will Horwitz, and Mrs. Miller and others whereby the one-fourth interest of Mrs. Miller in the Uptown Theatre was sold for a cash consideration of $35,000.00 and $60.00 payments per week were discontinued.

The net income from the estate of Will Horwitz for the fiscal year ending November 30, 1943, was $52,687.60, of which $15,898.86 was derived from Uptown Center and $28,923.81 derived from Uptown Theatre. Of the latter portion of the income the executor of the estate concluded that one-fourth thereof, or $7,230.95, belonged to, and was taxable to, Agatha Horwitz Miller. The Commissioner restored this amount to the net income of the estate of Will Horwitz and assessed the deficiency herein in controversy and also assessed this amount to Mrs. Agatha Horwitz Miller, knowing that both were not liable but that it should be collected from whichever one should be determined to be liable. The Tax Court sustained the Commissioner in assessing the deficiency against the estate.

The executor of the estate of Horwitz is here insisting that the $7,230.95, instead of being taxed to Horwitz, should have been taxed to his widow. The widow and her husband are here asserting the con-

trary and the Commissioner is here seeking to uphold the action of The Tax Court in assessing same to the estate.

In the unreported opinion of the Tax Court we find the following statement: "If the record showed that the income from the Uptown Theatre under this peculiar agreement was actually increasing Agatha's equity in that property or benefiting her, then the income might, to that extent, be taxable as her community income. However, the stipulation does not show that. Instead, it indicates that the income in question was only benefiting the estate. The agreement of August 26, 1940, provided that Agatha was to receive at least $35,000 if the Uptown Theatre was sold and was to receive one-fourth of the proceeds if they exceeded $140,000. Agatha received only $35,000 when the Uptown Theatre was sold in 1944, the minimum payment to which she was entitled in case of sale. The $60 per week which Agatha received and reported may have come from this property but that was the extent of her benefit from the income of the estate during this year."

We think the findings and conclusions of The Tax Court were correct and that the judgments should be affirmed in the petitions for review in No. 12,805 and No. 12,907. It is so ordered.

Healy, Circuit Judge, dissented.